IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.   1:11CR043 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | <u>GOVERNMENT'S SENTENCING</u> |
| | ) | <u>MEMORANDUM</u> |
| CHARLES L. IVEY, | ) | |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and David M. Toepfer, Assistant United States Attorney, and submits its sentencing memorandum.

**PROCEDURAL HISTORY**

On February 1, 2011, a grand jury indicted Ivey for (Count 1) Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (R. 1: Indictment, Page ID 1-2). On July 28, 2011, Ivey pleaded guilty to the Indictment with a written plea agreement. (R.27: Plea Agreement, Page ID 106-116). The Court then referred the matter to Probation for the preparation of a Presentence Investigation Report. (R. N/A: Minutes of Proceedings 7/28/2011).

According to the PSR and the agreement of the parties, Ivey was an Armed Career Criminal as defined by 18 U.S.C. 924(e) . (R. 27: Plea Agreement, Page ID 110, 112; R: N/A PSR, paragraph 26, Page ID N/A).   According to the plea agreement, his classification stemmed

from convictions for Robbery, Assault on a Peace Officer, and Felonious Assault. (R. 27: Plea Agreement, Page ID 112). The PSR identified a fourth conviction for Intimidation. (R: N/A PSR, paragraph 26, Page ID N/A). Accordingly, his base offense level was set at 33. (R. 27: Plea Agreement, Page ID 110, 112; R: N/A PSR, paragraph 26, Page ID N/A).

On December 22, 2011, the Court held a sentencing hearing. (R. 45: Sentencing Transcript, Page ID 321). The Court adopted the offense level computations in the plea agreement and the PSR, setting his offense level at 33. (Id. at Page ID 324-25). Ultimately, the Court sentenced Ivey to 180 months. (R. 31: Judgment, Page ID 122-28).

Ivey filed a Notice of Appeal on December 30, 2011. (R. 32: Notice of Appeal, Page ID 129). Ivey did not challenge his sentence; rather, he challenged the Court's ruling on a motion to suppress. United States v. Ivey, 507 Fed. App'x 502 (6th Cir. 2012). The Sixth Circuit affirmed the judgment on December 4, 2012. Id.

On March 22, 2016, Ivey filed a motion for relief under 28 U.S.C. § 2255. (R. 48: Motion for Relief, Page ID 367-73). The Court denied his motion on June 22, 2017. (R. 61: Memorandum of Opinion and Order, Page ID 474). The Sixth Circuit Court of Appeals later granted a motion for a certificate of appealability. (R. 65: Order, Page ID 483-85). While the appeal was pending, the Sixth Circuit issued its opinion in United States v. Burris, 912 F.3d 386 (6th Cir. 2019) (en banc), holding that Ohio felonious assault convictions under Section 2903.11(A)(1) no longer qualify as an Armed Career Criminal Act "violent felony" or a Sentencing Guideline "crime of violence" predicate offense. Based on Burris, the parties agreed to remand this case for resentencing to enable the Court to recalculate Ivey's guideline offense level without the enhancement for Ivey's Section 2903.11(A)(1) conviction, as the Court

previously did not have the benefit of the Burris decision when it originally determined Ivey's Sentencing Guideline range. (Case 17-3702, R. 21: Joint Motion to Remand).

**STATEMENT OF THE FACTS**

On November 26, 2010, Amherst Police Officers Joshua McCoy ("Officer McCoy") and Zackery Horning ("Officer Horning") were in the Heritage Plaza parking lot in Amherst, Ohio when they noticed a van with an improperly displayed front license plate. (R. 36: Supp. Hrg. Tr., p. 7). The van's front license plate was displayed on the dashboard and could not be seen in plain view, which violated Ohio Revised Code § 4503.21. (R. 36: Supp. Hrg. Tr., p. 8). The officers, who were in separate cruisers, followed the van as it left the plaza. (Id., p. 27). After following the van for a brief time, the officers activated their emergency lights and initiated a traffic stop. (Id., p. 8). Both cruisers were equipped with dashboard cameras, which automatically switched on when the cruiser's emergency lights were activated. (Id., p. 16, 63). These two cameras recorded the subsequent incident. (Suppression Hearing, Government's Exhibits 1 and 2).

After pulling the van over, Officer McCoy approached the driver's side window, (R. 36: Supp. Hrg. Tr., p. 9), while Officer Horning stood farther away as back-up, (Id., p. 59). At the window, Officer McCoy briefly spoke with the van's driver, Kermetta Bryant, to obtain her license and registration.[1] (Id., p. 9). In addition to Bryant, there were two more people in the van: Ivey, who was in the front-passenger's seat, and David McKee, who was in the backseat. (Id., p. 12). As he spoke with Bryant, Officer McCoy saw that Ivey was not wearing his

---

[1] Officer McCoy later discovered that Bryant was driving with a suspended license. (Id., p. 32).

3

seatbelt, in violation of Amherst Municipal Ordinance § 337.27. (R. 36: Supp. Hrg. Tr., p. 9). Officer McCoy then asked Ivey for identification, but, due to traffic noise, could not hear Ivey's response. (Id.).

To hear Ivey, Officer McCoy walked around the rear of the van to the front passenger's window. (Id., p. 10). As he approached Ivey's window, Officer McCoy noted that Ivey "was looking straight ahead. He was nervous. His carotid artery was pounding. He was sweating." (Id.). Nonetheless, Officer McCoy obtained identification from each of the van's occupants, including Ivey, and returned to his cruiser to run records checks. (Id., p. 11).
While Officer McCoy was in his cruiser running records checks, Officer Horning was standing roughly fifteen feet to the right and rear of the van, watching its occupants. (Id., p. 70). While watching the van, Officer Horning focused his attention on Ivey, who was "moving around a lot." (Id., p. 60). Specifically, Officer Horning noted that Ivey "looked like he was reaching under his seat, kind of reaching back, along the side of the seat." (Id.). Officer Horning watched Ivey do this repeatedly "for probably a good minute or so." (Id.). Noting that this was the type of "red flag" behavior he was trained to spot in the academy, (Id.), Officer Horning radioed Officer McCoy and told him about Ivey's movements, (Id., p. 61). Having just learned through dispatch that Ivey had a lengthy criminal history, Officer McCoy decided to order Ivey out of the van. (Id., p. 39).

At this point, which was roughly five minutes after pulling the van over, Officer McCoy had not completed the purpose of the traffic stop. (Id., p. 13). He testified that "[a]ll my records checks had not been completed yet. I hadn't checked with Lorain Police Department yet. In fact, I asked dispatch to check for that while I was handling my business." (Id., p. 33). In

addition, Officer McCoy had not yet issued a citation or warning to Kermetta Bryant for driving with a suspended license or to Ivey for failing to wear a seatbelt. (Id., p. 13).

As Officer McCoy approached the passenger's side of the van to remove Ivey, he again noticed tell-tale signs of Ivey's nervousness. (Id.). Officer McCoy ordered Ivey to get out and walk with him to the rear of his patrol car. (Id., p. 14). Once there, Officer McCoy asked Ivey if he could frisk him for weapons. (Id.). Ivey placed his hands in his pockets and asked, "What, do I have a warrant or something?" (Id.). Officer McCoy responded by saying, "No. I just want to pat you down for my safety." (Id.). Upon hearing this, Ivey took off running across the road and was hit by an oncoming car. (Id.).

Officer McCoy pursued Ivey and tried to place him in handcuffs. (Id., p. 15). However, as Ivey tried to get back onto his feet, a Taurus 9mm handgun came loose from his waistband and fell onto the pavement. (Id.). Officer McCoy kicked the handgun away from Ivey and, after a brief struggle, handcuffed him. (Id.). With Ivey in custody, Officer McCoy advised him of his Miranda rights and asked him why he fled. (Id.). Ivey responded that he fled, "[b]ecause I had a f***ing gun." (Id.)

## DISCUSSION

To determine whether a prior conviction qualifies as a "violent felony," the sentencing court must apply a categorical approach. Taylor v. United States, 495 U.S. 575, 602 (1990). This means that the court initially considers only the statutory elements of the prior offense, and not its underlying facts. Id. If the statute is ambiguous about whether the offense categorically qualifies as a violent felony, or is cast in the alternative with some options categorically qualifying and some not, then the sentencing court may consider the indictment, jury instructions

or guilty plea colloquy, and other relevant documents, such as the judgment, to determine if the defendant's conduct qualifies as a violent felony.  Shepard v. United States, 544 U.S. 13, 26 (2005).

As discussed below, Ivey has two qualifying offenses of violence and, therefore, his base offense level is 24 pursuant to U.S.S.G. § 2K2.1(a)(2).

I:   Robbery is categorically a violent felony under the elements clause.

According to the Shepard documents (R. 50, Response to Motion to Vacate, Page ID 391-95), Ivey was convicted of Robbery, in violation of O.R.C. § 2911.02.   That statute defines three ways in which a robbery can occur:

> A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
> (1) Have a deadly weapon on or about the offender's person or under the offender's control;
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
> (3) Use or threaten the immediate use of force against another.

In a case such as this, "[w]hen the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not," the Supreme Court has approved using a modified categorical approach. Johnson v. United States, 559 U.S. 133, 144 (2010).   Under the modified categorical approach, sentencing courts are permitted "to examine a limited class of documents" to determine whether a defendant's conviction was for an offense of violence.  Descamps v. United States, 133 S. Ct. 2276, 2283-84 (2013). Descamps, 133 S. Ct. at 2283-84.   A court using this approach may look to "the indictment or information and jury instructions." Taylor, 495 U.S. at 602.   However, the modified categorical approach may be used only if the statute of

6

conviction is "divisible." Descamps, 133 S. Ct. at 2293. A divisible statute is one that "lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.'" Id. at 2285 (quoting Nijhawan v. Holder, 557 U.S. 29, 41 (2009)).

Ivey was convicted of Robbery, in violation of O.R.C. 2911.02. (R. 50, Response to Motion to Vacate, Page ID 391-95). The indictment alleged that while attempting or committing a theft offense, he did "inflict, attempt to inflict, or threaten to inflict physical harm." (Id.) Ivey subsequently plead guilty to Robbery "as charged in count 2 of the indictment." (Id.) There was no motion to amend the indictment or allege a lesser-included offense. (Id.) The sentencing judgment also reflects that Ivey entered a plea of guilty to robbery "as charged in Count 2 of the indictment." (Id.) These court documents, read in conjunction, show that Ivey plead guilty to Robbery by inflicting, attempting to inflict or threatening to inflict physical harm. Although neither the indictment nor judgment entries specified which subsection of the statute he violated, a plain reading of the elements alleged in Count 2 of the indictment, to which Ivey plead, shows that he violated O.R.C. § 2911.02(A)(2).

The failure to allege a specific subsection in the indictment or sentencing judgment does not prevent the Court from reading the elements alleged in the indictment, in conjunction with a subsequent judgment, to determine what subsection of the statute was violated. In United States v. Alexander, 2016 U.S. App. LEXIS 2950 (6th Cir., Feb. 19, 2016), the Sixth Circuit was presented with a similar problem. In that case, a defendant was charged with Gross Sexual Imposition, in violation of O.R.C. § 2907.02. Id at *12. The indictment did not allege a specific subsection, but the court found the language of the indictment tracked O.R.C. § 2907.02(A)(2). Id. "Without specifying which subsection of the gross sexual imposition statute Defendant violated, the sentencing judge accepted Defendant's guilty plea of gross sexual imposition,

which it termed in its journal entry 'the lesser included offense under Count(s) 1 of the indictment.'" Id. at *12-13. The court went on to analyze what the lesser included offense was and concluded that it was a crime of violence as defined by U.S.S.G. § 4B1.2(a). Alexander, 2016 App. LEXIS at *16-17.

In this case, the Shepard documents show that Ivey committed a Robbery by inflicting, attempting to inflict or threatening to inflict physical harm, in violation of O.R.C. § 2911.02(A)(2). Therefore, his conviction qualifies as a violent felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); United States v. Johnson, 933 F.3d 540, 546 (6th Cir. 2019) (holding that a conviction under O.R.C. § 2911.02(A)(2) is a crime of violence under the Sentencing Guidelines).

II:  Assault on a Peace Officer is categorically a violent felony under the elements clause.

Ivey was also convicted of Assault on a Peace Officer, in violation of O.R.C. § 2903.13. (R. 50, Response to Motion to Vacate, Page ID 385-86). This offense also qualifies as a violent felony because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); United States v. Evans, 699 F.3d 858 (6th Cir. 2012).

III: A guideline sentence is sufficient but not greater than necessary in this case.

In all cases, the Court must consider a number of factors when fashioning a sentence that is sufficient, but not greater than necessary, to comply with the purposes and principles of sentencing. 18 U.S.C. § 3553(a). One of the factors the Court must consider is the guideline range. Presuming the court finds an offense level of 24 and grants a three-level downward

departure, the total offense level will be 21. The PSR suggests a criminal history category of VI, which would result in a guideline range of 77-96 months.

In this case, Ivey has been incarcerated since March 23, 2011. While the BOP has exclusive jurisdiction to calculate credit for time-served and good-time credit, United States v. Wilson, 503 U.S. 329, 334 (1992), it appears that by the time of sentencing, he will have been incarcerated for a total of approximately 3,229 days or 107 months (which includes both credit for time served awaiting disposition and time served since his sentencing on December 22, 2011.) According to the PSR, Ivey has been a productive inmate and has not received any disciplinary infractions. (R. 70: PSR, Page ID 494). Therefore, he would likely be eligible for up to 54 days per year for good conduct. 18 U.S.C. § 3624(b).

Under these facts, a sentence of credit for time served would, practically speaking, still represent an 11-month upward variance from the guideline range. Given Ivey's lengthy criminal record and the danger he posed to others by fleeing from the police into oncoming traffic at the time of his arrest, this variance is entirely justified. Even if the Court imposed the statutory maximum of 10 years (or 3,650 days), Ivey would still be eligible for up to 540 days of good-time credit, meaning he would be eligible for release after serving approximately 3,110 days.

## CONCLUSION

For the reasons set forth above, the United States recommends sentencing Ivey to credit for time served.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/David M. Toepfer
David M. Toepfer
Assistant U. S. Attorney
Reg. No. 0068008
100 East Federal Plaza
City Center One, Suite 325
Youngstown, Ohio 44503
330.740.6986/FAX 330.746.0239
Email David.Toepfer@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of January 2020, a copy of the foregoing Government's Response was filed electronically. Notice of this filing will be sent operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this system through the Court's system.

/s/David M. Toepfer
David M. Toepfer
Assistant U. S. Attorney